## BARNEY v. McCARTY *et al.*

1. FORECLOSURE OF MORTGAGES: TRIAL ON APPEAL. Mortgages are foreclosed by ordinary proceedings, and, on appeal, the Supreme Court will review only legal errors duly presented as in such cases.

2. DEEDS OF TRUST: NOTICE. The grantee in a deed of trust is not affected by notice of an outstanding mortgage on the same premises, acquired after he has parted with the consideration of the deed, and before he has become vested with an absolute title at a sale under such deed.

3. INDEX. Under § 30 of "an act to regulate conveyances," approved February 16th, 1843 (Rev. Stat., 202), §§ 3 and 4 of "an act concerning mortgages," approved February 14th, 1843 (Rev. Stat., 442), and § 4 of "an act relating to the office of recorder of deeds," approved January 23d, 1843 (Rev. Stat., 541), the total omission of the recorder to index a mortgage deprived the record thereof of the power of imparting constructive notice of its existence and contents. (Following and approving *Miller* v. *Bradford,* 12 Iowa, 14.)

*Appeal from Lee District Court.*

TUESDAY, APRIL 5.

THIS is an action brought to foreclose a mortgage upon lot 12, block 29, City of Keokuk, executed by Jonathan McCarty to Marsh, Lee & Delavan, for balance of pur-

chase money, and which has now become the property of petitioner.

The mortgage was dated 23d of October, 1847, duly acknowledged 25th of October, 1847, filed in the Recorder's office of Lee County for record on the 17th day of December, 1847, and was recorded at large on the 7th day of January, 1848, in book 2, page 186, being in its proper order and place in said records; and on the original instrument is indorsed a memorandum of the date of filing, date and book and page of the record, which is signed by the Recorder, all in the manner required by law. All this is admitted; but it appears no index to the said record was made until after this suit was commenced, which was in January, 1859. In the meantime said McCarty had sold said lot, and the several defendants have become owners of parts thereof, who now claim to be innocent purchasers for value, without notice. In an amended petition, all defendants are charged with having personal notice, but the proof taken fails, it is admitted, to bring this home to any except Wm. and R. L. Ruddick and Guy Wells.

The District Court rendered a personal judgment against McCarty, the mortgagor, but refused to decree said lot or any part thereof to be sold to pay said mortgaged indebtedness. From this the plaintiff appeals, and holds that the Court should have ordered said lot to be sold to pay the purchase-money due him.

*H. Scott Howell* for the appellant.

I. Under the laws in force when this mortgage was executed, all persons were chargeable with notice of the existence of the mortgage from the time the same was filed in the Recorder's office for record. Rev. Stat., 202, 541, 442; *Cook* v. *Hall*, 1 Gilm., 578; *Curtis* v. *Lyman*, 24 Verm., 338; *Sawyer* v. *Adams*, 8 Id., 172.

II. The provisions of the registry act are at most but ministerial and directory, and hence not vital or absolutely essential to constitute constructive notice. *The People* v. *Cook*, 14 Barb., 290; *S. C.*, 4 Seld., 67; *Jackson* v. *Young*, 5 Cow., 269.

III. The index is not essential in this case to impart notice, because it is not made so by the statute itself. *The People* v. *Cook, supra; Goodfrey* v. *Disbrow*, Walker Ch., 264; *Ex parte The Mohawk & Hudson River Railroad Company*, 19 Wend., 143.

IV. Plaintiff's equity is superior, because it is for purchase-money and is prior in time. *Sumner* v. *McDowell*, Walker Ch., 175; *Grimstone* v. *Carter*, 3 Paige, 436; *Cook* v. *Hall, supra.*

V. A subsequent purchaser will not be protected unless he has actually paid the purchase-money before receiving actual notice. *Thomas* v. *Graham*, Walker Ch., 118; *Jewett* v. *Palmer et al.*, 7 John., 68; *Minor* v. *Willoughby and Powers*, 3 Minn., 239.

*Rankin & McCrary*, with whom was *R. H. Gilmore*, for the appellee.

I. The loan of the money and the execution of the trust deed to secure the same made the *cestui que trust* a purchaser; *Porter et al.* v. *Green et al.*, 4 Iowa, 571; and if at that time he had no actual notice, but acquired the same before purchasing the property at trustee's sale, he should nevertheless be regarded as an innocent purchaser. He parted with his money before receiving notice. *Brace* v. *Reid*, 3 G. Greene, 422; *Varick* v. *Briggs*, 6 Paige, 323.

II. The index is an essential part of the record, and if omitted the loss falls upon the purchaser claiming title under the instrument defectively recorded, and not upon a subsequent purchaser without notice. *Miller* v. *Bradford*, 12 Iowa, 14; *Frost* v. *Beekman*, 1 John. Ch., 288; *Lessee of*

*Simeon Jennings* v. *Wood*, 20 Ohio, 251; *Scoles* v. *Wilsey et al.*, 11 Iowa, 266.

DILLON, J. — I. The first ground upon which the appellant seeks to reverse the decree below is, that the defendants, Wm. and R. L. Ruddick and Guy Wells, had actual notice of the mortgage in suit at the time when they respectively purchased the portions of the lot now owned by them.

This question cannot for several reasons be examined in this Court. By the Revision (§ 3000) mortgages are to be foreclosed as in cases of ordinary proceedings; and by section 2999 the Court on appeal "shall try only the legal errors" [of the cause] "duly presented, as in a case of ordinary proceedings, including the sufficiency of the facts stated on the record as the basis of the judgment to warrant the same."

As to Guy Wells, the record does not show that there was any finding of the facts, either by a jury or by the Court, as required by the last cited section of the Revision. As to the Messrs. Ruddick an issue was made to a jury, who found that they had no notice independent of the record of the mortgage in suit at the time when the deed of trust under which they claim was executed. No exception was taken to this finding of the jury and no motion was made to set the same aside as being against the weight of evidence or for any other cause. There is, therefore, no "legal error duly presented" to the appellate court for its review so far as relates to the question of actual notice. See *Docterman* v. *Webster*, decided at the present term.

II. It is furthermore claimed, by the plaintiff, that Ruddick is not a *bona fide* purchaser, because, on the day on which he purchased under his deed of trust and before the completion of such purchase, he was notified by the plain-

tiff's agent of the existence of the mortgage in suit. The fact of such a notice is conceded, and the only question which arises is, what effect, if any, it will have upon Ruddick's rights? To sustain his position, the plaintiff refers to *Thomas* v. *Graham*, Walk. Ch., 118; *Jewett* v. *Palmer*, 7 John. Ch., 65; and *Miner* v. *Willoughby*, 3 Minn., 239; which are to the effect that "A plea of a *bona fide* purchaser, without notice, must aver not only a want of notice at the time of the purchase, but also at the time of its completion, and of the payment of the money. The money must be actually paid before notice." Many other cases might be referred to, establishing the same principle.

But, unfortunately for the plaintiff, his case does not fall within the reason upon which this principle is based. If Ruddick had no notice at the time when he advanced his money and received his deed of trust in security therefor, no subsequent notice can affect him or in any way cut down his rights. He is in law considered as occupying as high ground as an absolute purchaser, from the moment he parts with his money. Mortgagees are within the protection of the statute, as well as purchasers. (R. S., 1843, p. 208, § 30; Code, 1851, §§ 1211–1214; *Porter et al.* v. *Green et al.*, 4 Iowa, 571.)

III. We now arrive at the principal and most important question in the cause, and that is, whether the defendants are affected with constructive notice of the plaintiff's mortgage.

And this raises but one inquiry, viz., whether under the registration laws then in force, the *total omission* by the Recorder to index this mortgage, deprived the record thereof of the power of imparting constructive notice of its existence and contents.

The prior decisions of this Court, although not covering a case precisely like the present, aid nevertheless most materially in its solution. In other States there exists a

most perplexing conflict of authority respecting the question whether the grantee in an instrument, or a subsequent purchaser, shall suffer for the mistake or omission of the Recorder in registering it, or neglecting to register it. By some Courts it is considered, that where the party has duly deposited his deed with the proper officer for record, he has performed his whole duty, and consequently the subsequent mistake or neglect of the Recorder will not affect him or invalidate his title. (*Nichols* v. *Reynolds*, 1 R. I., 30, 31; *Cook* v. *Hall*, 1 Gill., 575; 2 Sug. Ven., 466; *Merrick* v. *Wallace*, 19 Ill., 486; *McGregor* v. *Hall*, 3 S. & P., 401; 10 Ala., 368; *Beverly* v. *Ellis*, 1 Rand. [Va.], 106.)

In the case last cited, the Court went so far as to hold, that where a deed is filed for record, it is in contemplation of law recorded, though it should, in consequence of being stolen, never be entered upon the record. But the current of authority is otherwise, holding it to be the duty of the party filing the instrument, as between him and a subsequent *bona fide* purchaser, to see that all of the pre-requisites of a valid and complete registration are complied with. (*Frost* v. *Beekman*, 1 John. Ch., 288; 10 John., 544; *Jennings* v. *Wood*, 20 Ohio, 261; 8 Verm., 175; 1 Story's Eq. Jur., § 404; 10 Verm., 555.) And this question, conceded not to be free from difficulty, was upon solemn deliberation settled in this Court in *Miller* v. *Bradford et al.*, 12 Iowa, 14. With this decision we are content, and the question cannot be regarded as being any longer an open one in this State. Agreeably to the doctrine there established, it was the duty of the mortgagee of the instrument in suit, to see that the essential requirements of the registry law were observed; for, unless substantially observed, the registry thereof would not impart constructive notice to subsequent mortgagees or purchasers, and consequently the loss, if any, will fall upon him or his assignee, and not upon them.

We now advance one step further, with a view to ascertain whether the indexing of the mortgage was an essential requirement of the statute. The mortgage in question was executed and filed for record during the time when the Revised Statutes of 1843 (" The Blue Book ") were in force. There are three acts which relate to this subject, viz. : 1st. Section 30 of the Act of February 16, 1843 (R. S., 202), entitled " An Act to regulate Conveyances." 2d. Sections 3 and 4 of the Act of February 14, 1843 (R. S., 442), entitled " An Act concerning Mortgages." 3d. Section 4 of the Act of January 23d, 1843 (R. S., 541), entitled " An Act relating to the office of Recorder of Deeds."

These laws were all passed at the same session, and within a month of each other. Being *in pari materia*, they are not only to be construed together, but to be construed, if it can fairly and reasonably be done, so as to give operation and effect to each.

Taking these acts as a whole, they very clearly point out the successive steps which together constitute a complete and therefore valid registration of an instrument. As constructive notice, by means of recorded instruments, depends wholly upon statutory provisions, it is necessary carefully to examine those provisions. As concerns the present inquiry, the substance of the Act of February 16, 1843, is, that the proper instrument "shall be recorded in the office of the Recorder of the county in which the real estate is situated " (§ 29), and "shall (§ 30), from the time of filing the same with the Recorder, impart notice to all persons of the contents thereof."

While provision is thus made as to the effect of filing, no provision is made as to the manner of filing, or noting, or mode of recording. The Act of February 14, § 2 (R. S., 442), after repeating almost literally the above language, as to the effect of filing, proceeds, in the next section (3), thus to point out the duty of the Recorder: "It shall be

the duty of the Recorder to indorse on every mortgage filed in his office for record, and note in the record the precise time such mortgage was filed for record."

By analyzing the fourth section of the act of January 23, 1843, it will be seen that the Recorder is required to perform the following acts, not only with respect to mortgages, but all instruments authorized to be recorded:

1. "File all deeds, &c., presented to him for record, and note on the back of the same the hour and day when they were presented for record."

2. "Keep a fair book on which he shall *immediately* make an entry of every deed, giving date, parties, description of land, dating it on the day when it was filed in his office."

3. "Record all instruments in regular succession."

4. "Make and keep a complete alphabetical index to each record book, showing page on which *each* instrument is recorded, with the names of the parties thereto."

This act is silent as to the time when notice commences, but is specific as to the mode of making and keeping the registry.

Reading these various statutes together in the light of the known objects of registration laws, the Court is of opinion that each of the following steps is necessary to be substantially observed, in order to constitute a compliance with their requirements:

1. The instrument must be deposited or filed with the Recorder for record. He thereupon notes the fact and "the hour and day" on the back thereof, and the day on "the fair book," as it is styled, and retains the instrument in his office. The instrument itself thus remaining on file in his office, with the indorsement upon it, and the entries in the "fair book," which are required to be immediately made, constitute the notice until the instrument is actually extended upon the records.

2. The next step in the process is the recording, that is, the copying of the instrument at large into the "record book," and noting in it the precise time when it was filed for record. The object of this noting is that the record may show on its face when the notice commences.

3. The third and final step is the indexing of the instrument so recorded. The statute prescribes the requisites of the index. It shall be a complete alphabetical index to each record book, and shall give the names of the parties, and show the page where each instrument is recorded. The paging cannot, of course, be given until the deed is actually transcribed into the record book, and up to this time it remains on file. When recorded and indexed, the deed may be withdrawn, and the record takes its place and constructively imparts notice to the world of its existence and contents.

Keeping in view alike the well known objects and the enlightened policy on which the registry acts are based, as well as the language and requirements of the several statutes above cited, the Court are of the opinion, that all three of these steps are essential integral parts of a complete valid registration. It follows that, inasmuch as the plaintiff's mortgage was never indexed at all until after the defendant's right attached, the record thereof was so incomplete and defective as not constructively to charge subsequent purchasers or mortgagees with notice.

And having stated the result, we might here properly conclude, were it not due to the elaborate research of counsel, as evinced in their arguments, that we should state somewhat more at large the reasons for our opinion.

The plaintiff's counsel, looking at a detached portion of these acts, rests his case wholly upon the statutory declaration, that notice of the existence of the mortgage shall date "*from the time the same is filed in the Recorder's office for record.*" As the filing is but one step in a series of steps,

this language presupposes, and is in fact based upon the assumption that the other, and in the order of time, the subsequent requirements of the law, will be observed. We ask this question: Would the mere filing be notice, if the instrument were never recorded, and if the grantee should voluntarily withdraw it before registration? Certainly not; and yet the literal construction which is insisted on by the plaintiff would so require us to hold.

Again: The meaning of this language has been determined by the recent decision of *Miller* v. *Bradford et al.*, 12 Iowa, 14. "This statute," says WRIGHT, J., "in our opinion, was only intended to fix the *time* from which notice to subsequent purchasers was to commence, and not to make such filing or depositing notice of the contents *after* the same was recorded." The correctness of this view is supported by both reason and authority. Without this provision, it would remain uncertain whether notice dated from time of filing, or only from the time of actual registration; and to settle and fix this most material matter was the cardinal and primary design of the Legislature. See on this point *Barney* v. *Little et al.*, decided at the present term.

We are referred to the case of *Cook* v. *Hall*, 1 Gilm., 575, as being against the view we have taken. It is true that the Illinois statutes are the same as ours, and the case is apparently, but yet not really, in point. The deed in that case was deposited with a deputy recorder *de facto*, who omitted to enter it on the "fair book" provided for by the law, but the deed itself remained on file. The Court held that it was notice from the time of filing the same, and that the requisition about the entry in the "fair book" was only directory. The case did not turn on the necessity of an alphabetical index, after the deed was registered and withdrawn. Besides this case, as well as the subsequent one of *Merrick* v. *Wallace*, 19 Ill., 486, in the reasons given for the decision, conflicts with the doctrine of this Court in

*Miller* v. *Bradford, supra,* inasmuch as it is considered that any omission or fault of the Recorder must fall upon a subsequent purchaser, and not upon the party who files the instrument for record.

Plaintiff also relies upon *Curtis* v. *Lyman,* 24 Vt., 334. The Court in this case, under a statute which provided "That a book or books, *with an index or alphabet to the same,* suitable for registering deeds, &c., should be kept in each *town,* in which the clerk should truly record all deeds," &c., held, that an innocent party was affected with notice of a mortgage which, though duly recorded, was never indexed. In setting forth the reasons for this decision, the Court says:

"It is obvious that if an index is held to be an essential part of the record, the way will at once be opened for a serious and embarassing course of litigation in settling, by judicial construction, what shall constitute a sufficient index, and what departures from a prescribed form, shall render the record invalid; and all this perhaps when there has been no real injury to any one in consequence of a defective index. But if, from the want of an index, or a proper entry upon it, the record is to be inoperative, shall it be held absolutely void? If the reference to it upon the index be not made the instant the record is completed, is the record a mere nullity? Or may the record be restored and made operative by a subsequent entry upon the index? If so, when does the record take effect? * * * We are all agreed that the proper office of the index is to point to the record, but that it constitutes no part of the record." As our statute prescribes the requisites of the index which it requires, these reasons would not be applicable to it.

With us the practice has always been to search for titles through the names of the successive owners, and by means of the index. With us alienations of real estate are easy and numerous. There is not, as in Vermont, a registry in

each town, but only one for each county. The record books are consequently numerous and voluminous. It is utterly impracticable to examine them page by page. It is stated in the argument that the record books in Lee county already number some thirty volumes. An index is a necessity. The evidence in this case shows that an index was kept, but for some reason the mortgage in this suit was wholly omitted from it. If no index was required or kept, a searcher for titles would know what he had to do. But if one is kept, and if a given instrument is omitted and yet the record affects the purchaser with notice, it is a snare which will entoil the most diligent and careful.

A deed, in the language of counsel, might as well be "buried in the earth as in a mass of records without a clue to its whereabouts," or in the language of the Supreme Court of Vermont, in *Sawyer* v. *Adams*, 8 Verm., 172, the instrument might as well be written "on a slate or copied into the Recorder's family Bible, as into a book without being indexed."

We are also cited to *McLaren* v. *Thompson*, 40 Maine, 284. This case and *Handley* v. *Howe*, 22 Maine, 560, are, as they seem to us, confirmatory of our position. The statute required a "a noting on the book and on the mortgage of the time when the same was received."

The Court (40 Maine, 284), says: "As there is an interval longer or shorter as the case may be, between the delivery of an instrument to be recorded, and the recording of the same, the object of the above provision of the statute is to protect the grantee, *during the time between the noting and recording*. The statute, it will be seen, required the noting both on the mortgage and the book; and provided that the instrument "should be considered as recorded, when left with the clerk as aforesaid." It was held, that a noting on *both* was essential to make it constructive notice

against an attachment levy. *Handley* v. *Howe*, 22 Maine, 560.

The analogies of the law support our view. Thus, an undocketed judgment is no notice. 2 Sug. Ven., 104.

To hold that an index is not essentially part of a valid and complete registration in this State, would overlook the uniform practice of relying wholly upon it to find the names of the various owners in tracing titles, and would also ignore the fundamental design of the recording acts, which is to give certainty and security to titles, by requiring all deeds and all liens to be made matters of· public record, and thus discoverable by all persons who are interested in ascertaining their existence and who will examine the records in the mode which the law has pointed out. *Cummings* v. *Long, ante.*

Decree affirmed.